UNITED STATES of America, Plaintiff-Appellee (81–3384), Respondent (81–3743),

v.

Carl SUTTON, Jr., Defendant-Appellant (81–3384), Petitioner (81–3743).

Nos. 81–3384, 81–3743.

United States Court of Appeals, Sixth Circuit.

Argued Jan. 24, 1983.

Decided March 1, 1983.

Eugene D. Smith, Cincinnati, Ohio, for Carl Sutton, Jr.

Terry W. Lehmann, Asst. U.S. Atty., Cincinnati, Ohio, for United States.

Before EDWARDS, Chief Circuit Judge, MARTIN, Circuit Judge, and CELEBREZZE, Senior Circuit Judge.

BOYCE F. MARTIN, Jr., Circuit Judge.

This appeal consolidates two post-judgment claims for relief. Sutton appeals from the district court's denial of his motion to correct an illegal sentence, pursuant to Rule 35 of the Federal Rules of Criminal Procedure. He also appeals from the court's denial of habeas corpus relief pursuant to 28 U.S.C. § 2255.

Sutton was convicted by a jury in the United States District Court for the Southern District of Ohio of conducting an enterprise through a pattern of racketeering, in violation of 18 U.S.C. § 1962(c); conspiracy to commit that offense, in violation of 18 U.S.C. § 1962(d); using the telephone to facilitate drug offenses, in violation of 21 U.S.C. § 843(b); distribution of a controlled substance, in violation of 21 U.S.C. § 841(a)(1); and possession of a controlled substance with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). A panel of this court reversed his convictions, *United States v. Sutton,* 605 F.2d 260 (6th Cir. 1979), but the convictions were later reinstated by the court *en banc,* 642 F.2d 1001 (6th Cir.1980), *cert. denied,* 453 U.S. 912, 101 S.Ct. 3144, 69 L.Ed.2d 995 (1981). Upon remand the district court sentenced the defendant to five years for his RICO convictions, 18 U.S.C. § 1962(c) and (d), and twelve years plus three years special parole for the predicate offenses, 21 U.S.C. §§ 841(a)(1) and 843(b). The sentences are to run consecutively.

The first issue before the court is Sutton's motion to correct an illegally imposed sentence pursuant to Rule 35. Sutton argues that the imposition of consecutive sentences for his Racketeer Influenced and Corrupt Organization offenses and the predicate drug trafficking offenses violates the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution. He reasons that the Double Jeopardy Clause is violated because he is effectively being punished twice for the underlying drug offenses.

The Supreme Court in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), has explained the analytical process for determining whether the imposition of consecutive sentences for related offenses violates the Double Jeopardy Clause. There the defendants appealed the imposition of consecutive sentences for conspiracy to import marijuana, 21 U.S.C. § 963, and conspiracy to distribute marijuana, 21 U.S.C. § 846. The facts supporting the convictions revealed the existence of a single conspiracy. The court succinctly enunciated the constitutionality of multiple punishments:

> As we previously noted in *Brown v. Ohio,* [432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187], "[w]here consecutive sentences are imposed at a single criminal trial, the role of the constitutional guarantee is limited to assuring that the court does not exceed its legislative authorization by imposing multiple punishments for the same offense." Thus, the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution.

450 U.S. at 344, 101 S.Ct. at 1145 (footnote and citation omitted).

*Albernaz* presented three alternative methods for determining what punishments

Congress intended to impose for violations of 21 U.S.C. §§ 846 and 963. An examination of the language of each statute revealed that each unambiguously authorized punishment for violations of its terms. However, neither statute contained an explanation of how its punishments related to punishments authorized by the other. The legislative history of the statutes was likewise silent on the question of whether consecutive sentences could be imposed for violations of sections 846 and 963.

As a third alternative, the Court applied the *Blockburger* rule to determine whether Congress intended the two statutory offenses to be cumulatively punished. *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

> The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.

284 U.S. at 304, 52 S.Ct. at 182. *See also* cases refining *Blockburger*: *Illinois v. Vitale*, 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980); *Whalen v. United States*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980); and *Brown v. Ohio*, 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977). Courts will infer from the existence of a single offense that Congress did not intend to authorize the imposition of cumulative punishments. The *Albernaz* Court concluded that "[s]ection 846 and 963 specif[ied] different ends as the proscribed object of the conspiracy—distribution as opposed to importation . . . ." 450 U.S. at 339, 101 S.Ct. at 1142. Hence, Congress intended to permit consecutive sentences for violations of both provisions. The Court cautioned that the *Blockburger* rule is merely a "means of discerning congressional purpose" and does not control where "there is a clear indication of contrary legislative intent." 450 U.S. at 340, 101 S.Ct. at 1143.

*Albernaz* teaches that multiple punishment for related offenses are constitutionally permissible where Congress *intends* to authorize multiple punishments. Congressional intent is discerned through statutory language, legislative history, and the *Blockburger* rule.[1] Our inquiry in the present case, then, must be whether Congress intended to permit consecutive sentences for RICO violations and for the underlying offenses of drug trafficking.

An examination of the language of 18 U.S.C. §§ 1962–1963 and 21 U.S.C. §§ 841 and 843 sheds little light on the question of whether Congress intended to allow multiple punishments for violations of both statutes. Section 1963(a) of RICO permits courts to impose maximum penalties of $25,000 or twenty years or both for any violation of section 1962. Section 841(b) enumerates penalties for violations of subsection (a) according to the type of controlled substance involved in the violation. And section 843(c) fixes the maximum penalties for violations of subsections (a) and (b) at $30,000 or four years or both. Although 18 U.S.C. § 1962 specifically refers to federal laws prohibiting drug trafficking, section 1963 gives no clue to the relationship of the penalties imposed by RICO and the drug laws. Nonetheless, each statute unambiguously imposes severe criminal penalties for violations of its terms.

An examination of congressional purpose for enacting RICO is extremely illuminating on the question of whether multiple punishments were intended. Section 1 of Public Law 91–452 provided:

> It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence gathering process, by establishing new penal prohibitions,

---

1. In *Pandelli v. United States*, 635 F.2d 533 (6th Cir.1980), a panel of this court stated that courts should resort to the *Blockburger* rule only after "prior techniques of [statutory] construction have failed to resolve the question of whether the legislature intends to allow cumulative punishments for violations of two statutes." 635 F.2d at 536. To the extent that *Blockburger* does not control in the face of contrary legislative intent, *Blockburger* is relegated to last resort status.

and *by providing enhanced sanctions* and new remedies to deal with the unlawful activities of those engaged in organized crime.

Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922–923, reprinted in [1970] U.S.Code Cong. & Admin.News, p. 1073 (emphasis added). Section 904 of the same law further elaborated: "(a) The provisions of this title shall be liberally construed to effectuate its remedial purposes. (b) Nothing in this title shall supersede any provision of Federal ... law imposing criminal penalties ... in addition to those provided for in this title." *Id.*

The clear legislative intent expressed concurrently with the enactment of RICO is to permit, perhaps even to encourage, courts to impose cumulative sentences for RICO offenses and the underlying crimes. Cumulative sentences are the "enhanced sanctions" which Congress deemed necessary to treat the spreading disease of organized crime. In fact, if cumulative convictions and sentences were disallowed by courts, Congress' purpose to eradicate organized crime would be thwarted because the RICO penalties are in many cases lighter than penalties for underlying offenses. *Accord United States v. Rone,* 598 F.2d 564, 572 (9th Cir.1979) *quoted* for support *in United States v. Boylan,* 620 F.2d 359, 361 (2d Cir.1980). Finally, Congress' statement that RICO "shall not supersede" other federal laws and criminal penalties compels the conclusion that Congress intended to impose multiple punishments in the present situation.

The only conclusion to be drawn from the legislative history is that Congress clearly envisioned consecutive sentences for violations of RICO and the accompanying predicate offenses. Where Congress intended, as it did here, to impose enhanced and cumulative punishments for violations of 18 U.S.C. § 1962 and 21 U.S.C. §§ 841 and 843, the imposition of consecutive sentences does not violate the Constitution. *See Albernaz,* 450 U.S. at 344, 101 S.Ct. at 1145; *Missouri v. Hunter,* —— U.S. ——, —— – ——, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983), Sutton has failed to show that his sentences were illegally imposed in violation of the Double Jeopardy Clause.[2] Hence, his Rule 35 claim was properly denied.

■ The second issue on appeal is whether the district court properly denied Sutton habeas corpus relief pursuant to 28 U.S.C. § 2255. Sutton claims that the government failed to prove beyond a reasonable doubt at the trial in the present case that a RICO "enterprise" existed as an entity separate from the racketeering activity. Sutton relies on the intervening Supreme Court decision in *United States v. Turkette,* 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981), which definitely established the elements of "enterprise." The government's failure to prove the existence of an enterprise would

**2.** Sutton argues strenuously that application of the *Blockburger* rule yields the conclusion that RICO violations and the underlying drug trafficking offenses are but a single offense for which he has been illegally punished through cumulative sentences. We decline to apply the *Blockburger* rule to the present case. The congressional intent to impose multiple punishments clearly expressed in the RICO legislative history governs regardless of the resulting determination under the *Blockburger* rule. *Albernaz,* 450 U.S. at 340, 101 S.Ct. at 1143.

The Fifth, Fourth, and Ninth Circuits have applied *Blockburger* to hold that RICO offenses and the predicate offenses are not the same. *United States v. Peacock,* 654 F.2d 339 (5th Cir.1981); *United States v. Grande,* 620 F.2d 1026 (4th Cir.), cert. denied, 449 U.S. 830, 101 S.Ct. 98, 66 L.Ed.2d 35 (1980); and *United States v. Solano,* 605 F.2d 1141 (9th Cir.), cert.

denied, 444 U.S. 1020, 100 S.Ct. 677, 62 L.Ed.2d 652 (1979). We note in passing that the Fifth and Fourth Circuits misinterpreted the *Blockburger* rule to require that *one* of the offenses contain an element not contained in the other; the proper rule is that *each* offense contain an element or require proof of a fact not a part of the other. Likewise the *Solano* decision by the Ninth Circuit may not be good law because of the subsequent Supreme Court decisions in *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980) and *Illinois v. Vitale,* 447 U.S. 410, 100 S.Ct. 2260, 65 L.Ed.2d 228 (1980). *Whalen* and *Vitale* modify the *Blockburger* rule and require courts to narrow a multipurpose statute, such as RICO, to the single alternative applicable to the case at bar for the purposes of comparing its elements to the elements of the predicate or related offense.

necessitate the vacation of Sutton's RICO violations. However, we find that the government proved the existence of an enterprise as required by 18 U.S.C. §§ 1961 and 1962.

The primary issue which *Turkette* resolved was whether Congress intended to include within the definition of enterprise only those organizations which are exclusively criminal. The Supreme Court held that enterprise, as defined in section 1961(4), includes both legitimate and illegitimate associations and the association's purpose need not be exclusively criminal. 452 U.S. at 580–581, 101 S.Ct. at 2527. In reaching this holding, the Supreme Court noted that the government must prove the existence of an enterprise "separate and apart from the pattern of racketeering in which it engages." 452 U.S. at 583, 101 S.Ct. at 2528. The existence of an enterprise "is proved by evidence of an ongoing organization . . . and by evidence that the various associates function as a continuing unit." *Id.*

*Turkette* does not alter the outcome in the present case because in the prior *en banc* opinion of this court, we identified an enterprise apart from the pattern of racketeering activity.

> Every one of the nine persons concerned was engaged in important activities in the conduct of this illegal business [to sell heroin].
>
> . . . . .
>
> As is true in any enterprise, some of the conspirators were at the very center of the enterprise. They were Herschel Weintrub, Carl Sutton, and Edwin A. Adams. Weintrub and Adams operated the heroin conspiracy from their jewelry stores . . . in *close and continual* partnership with Carl Sutton. [They] also used their jewelry stores for fencing stolen jewelry, stolen firearms, stolen household goods, and the commission of mail fraud. The evidence shows and the jury could have found that they used the proceeds of these ancillary crimes to finance further

purchases of heroin. *This was in fact an integrated "enterprise."*

642 F.2d at 1017–1078 (emphasis added).

Furthermore, the trial court, contrary to Sutton's allegations, explicitly instructed the jury on the element of enterprise. The court's instructions were as follows:

> (Charge 3071) All defendants are charged in Count 2 of the indictment with participating in an enterprise which was engaged in unlawful businesses, between the dates of May 6, 1976, and July 1, 1977, in violation of 18 U.S.C. 1962 and 1963.
>
> (Charge 3702) 18 U.S.C. 1962 provides . . . .
>
> . . . . .
>
> (Charge 3703) Each of the following elements must be proved beyond a reasonable doubt in order to establish the offense charged in Count 2 of the indictment:
>
> > *First,* that the defendant in question was employed by or associated with any enterprise engaged in or affecting interstate commerce;
>
> . . . . .
>
> (Charge 3705) The term "enterprise" has been defined in 18 U.S.C. 1961 as including "any individual, partnership, corporation, association or other legal entity, and any . . . group of individuals associated in fact although not a legal entity."

The jury knew it could not convict Sutton of violating section 1962 unless it found the existence of an enterprise beyond a reasonable doubt. And, the jury did convict Sutton on this count. Sutton has presented no facts or arguments to suggest that the jury disregarded the trial court's instructions or that it discharged its duty improperly in any way. We decline to substitute our judgment for the jury's determination that the government had proved the existence of an enterprise beyond a reasonable doubt.

Because there was sufficient evidence for the jury to find the existence of an enterprise beyond a reasonable doubt, because the jury was instructed that it could convict

Sutton of violating section 1962 only if it so found, and because the jury did convict Sutton, we conclude that the government in fact proved beyond a reasonable doubt that Sutton conducted an enterprise through a pattern of racketeering in violation of section 1962. The district court properly denied Sutton's petition for habeas relief.

Judgments affirmed.