**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Evan CALLANAN, Jr.; Evan Callanan,
Sr., Defendants-Appellants.**

**No. 86–1140.**

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 17, 1986.

Decided Jan. 23, 1987.

Merritt, Circuit Judge, dissented and filed opinion.

Nicholas Smith, Southfield, Mich., Thomas Wilhelm (argued) for defendants-appellants.

545

Juanita Temple, Asst. U.S. Atty. (argued), Detroit, Mich., for plaintiff-appellee.

Before MERRITT and WELLFORD, Circuit Judges, and EDWARDS, Senior Circuit Judge.

WELLFORD, Circuit Judge.

This case concerns an appeal from the decision of the district court following a remand this court issued in *United States v. Qaoud,* 777 F.2d 1105 (6th Cir.1985).

The underlying facts of this case are set out fully in *Qaoud. See* 777 F.2d at 1107–10. For the purposes of this appeal we recite only the pertinent facts that defendants Evan Callanan, Jr. and Evan Callanan, Sr. were convicted by a jury, and this court affirmed the convictions under 18 U.S.C. §§ 1962(c) and 1962(d) of conspiracy to violate RICO and of violating a substantive provision of RICO. Callanan, Jr. received concurrent sentences of eight years each on the RICO charges and five years on other charges. Callanan, Sr. received concurrent sentences of ten years each on the RICO charges and five years on a mail fraud charge. *Id.* at 1108.

In *Qaoud,* this court remanded the case to the district court for the limited purpose of determining whether the concurrent RICO sentences should be vacated in light of *Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). On remand, Judge Gilmore ruled from the bench that *Ball* did not require the sentences in question to be vacated. The sole issue, therefore, is whether the concurrent sentences in this case for conspiracy and substantive charges under RICO are permissible.

■ In *Ball v. United States,* the Supreme Court addressed the issue whether concurrent sentences were permissible for convictions under two federal statutes that proscribed receiving and possessing a fire-

arm shipped in interstate commerce. *See* 470 U.S. at 857, 105 S.Ct. at 1669. The Court's analysis focused on whether Congress intended a defendant's conduct to be punishable under both provisions. *See id.* at 861, 105 S.Ct. at 1671. To ascertain Congress' intent, the Court applied the test announced in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932): "whether each provision requires proof of a fact which the other does not." 470 U.S. at 861, 105 S.Ct. at 1671. *See also United States v. Woodward,* 469 U.S. 105, 107, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985); *Albernaz v. United States,* 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981). The Court in *Ball* determined that proof of illegal receipt necessarily includes proof of illegal possession. 470 U.S. at 862, 105 S.Ct. at 1672. The Court also examined the legislative history and concluded that the provisions were not "directed to separate evils." *Id.* at 864, 105 S.Ct. at 1673. The *Blockburger* test and the statutes' legislative history thus convinced the Court that Congress did not intend duplicative punishment under these two provisions. *Id.* at 865, 105 S.Ct. at 1673.

■ Under *Ball,* therefore, we must first consider whether the different provisions of the statutes at issue in this case require proof of a fact which the other does not. We agree with Judge Gilmore's determination that the conspiracy and substantive offense charges do require different proofs. The substantive RICO charge requires proof that defendants engaged in an enterprise that affected interstate commerce and that they committed two or more racketeering offenses. *See* 18 U.S.C. § 1962(c);[1] *United States v. Sutton,* 642 F.2d 1001, 1008 (6th Cir.1980), *cert. denied sub nom. Elkins v. United States,* 453 U.S. 912, 101 S.Ct. 3143, 69 L.Ed.2d 995 (1981). These elements need not be proved to establish the offense of a criminal conspiracy.

1. Section 1962(c) provides:
   (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
   18 U.S.C. § 1962(c).

Similarly, the conspiracy charge requires proof of an *agreement* to engage in conduct that would establish a substantive RICO charge, *see* 18 U.S.C. § 1962(d); *Sutton,* 642 F.2d at 1017, which need not be proved to establish the substantive charge. The statutory definition of the § 1962(c) RICO offense does not contain an element of agreement. The definitions of "racketeering activity" and "pattern of racketeering activity," components of § 1962(c), moreover, do not incorporate any element of agreement. *See* 18 U.S.C. § 1961(1), (5). The *Blockburger* test, therefore, indicates that concurrent sentences are permissible in this case. *See also United States v. Castellano,* 610 F.Supp. 1359, 1394–96 (S.D.N.Y.1985) (§§ 1962(c) and (d) are separate offenses under *Blockburger* test).

In addition to applying the *Blockburger* test, the *Ball* Court considered legislative history in determining congressional intent. *See also United States v. Woodward,* 469 U.S. 105, 108–09, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985); *United States v. Sutton,* 700 F.2d 1078, 1080 (6th Cir.1983) (appeal after remand, hereinafter *"Sutton II"*) ("Congressional intent is discerned through statutory language, legislative history, and the *Blockburger* rule.") In discussing RICO's purposes, the *Sutton II* court first quoted a portion of the legislative history as follows:

> It is the purpose of this Act to seek the eradication of organized crime in the United States by strengthening the legal tools in the evidence gathering process, by establishing new penal prohibitions, and *by providing enhanced sanctions* and new remedies to deal with the unlawful activities of those engaged in organized crime.

700 F.2d at 1080–81 (quoting Organized Crime Control Act of 1970, Statement of Findings and Purpose, 84 Stat. 922–923, reprinted in [1970] U.S.Code Cong. & Admin.News, p. 1073) (emphasis added). The Court also noted that section 904 of the same law elaborated: "(a) The provisions of this title shall be liberally construed to effectuate its remedial purposes." *Id.* at

1081. From this background the court determined:

> The clear legislative intent expressed concurrently with the enactment of RICO is to permit, perhaps even to encourage, courts to impose cumulative sentences for RICO offenses and the underlying crimes. Cumulative sentences are the "enhanced sanctions" which Congress deemed necessary to treat the spreading disease of organized crime. In fact, if cumulative convictions and sentences were disallowed by courts, Congress' purpose to eradicate organized crime would be thwarted because the RICO penalties are in many cases lighter than penalties for underlying offenses.

700 F.2d at 1081. *See also United States v. Rone,* 598 F.2d 564, 571–72 (9th Cir. 1979), *cert. denied sub nom. Little v. United States,* 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780 (1980) (Congress' purposes thwarted unless sentences for RICO charge and predicate offense allowed to run consecutively).

Although *Sutton II* and *Rone* specifically addressed the question of consecutive sentences for a RICO charge and a predicate offense, Congress' express purposes in enacting RICO suggest the same conclusion in this case concerning conspiracy to violate and actual violation of RICO proscriptions. Indeed, the Supreme Court has found in a comparable situation that "Congress intended to retain each offense as an 'independent curb' available for use in the strategy against organized crime." *Iannelli v. United States,* 420 U.S. 770, 791, 95 S.Ct. 1284, 1296, 43 L.Ed.2d 616 (1975). Although *Iannelli* concerned conspiracy to violate and violation of a gambling provision under the Organized Crime Control Act of 1970, 18 U.S.C. §§ 371, 1955, we believe that the principle asserted in *Iannelli* is equally applicable to this case. The legislative history indicates that Congress intended that conspiracy to violate RICO and the acts involved in violation of the substantive RICO provision be separate offenses that do not merge for sentencing purposes.

Finally, Congress' intent to allow punishment under both §§ 1962(c) and 1962(d) is shown by the fact that the two provisions are "directed to separate evils." *See United States v. Woodward,* 469 U.S. 105, 109, 105 S.Ct. 611, 612, 83 L.Ed.2d 518 (1985); *cf. Ball v. United States,* 470 U.S. at 864, 105 S.Ct. at 1673 (considering the "separate evils" question but finding no separate evils in the statutes at issue). "The basic rationale of the law of conspiracy is that a conspiracy may be an evil in itself, independently of any other evil it seeks to accomplish." *Iannelli,* 420 U.S. at 779, 95 S.Ct. at 1290 (quoting *Dennis v. United States,* 341 U.S. 494, 573, 71 S.Ct. 857, 899, 95 L.Ed. 1137 (1951) (Jackson, J., concurring)). By enacting a provision proscribing conspiracy to violate RICO, Congress addressed an evil separate and independent of the substantive § 1962(c) provision. *United States v. Ohlson,* 552 F.2d 1347, 1349 (9th Cir.1977); *United States v. Castellano,* 610 F.Supp. 1359, 1393 (S.D.N.Y.1985). Because sections 1962(c) and 1962(d) are "directed to separate evils," we conclude that Congress intended to permit concurrent sentences for conspiracy to violate RICO and substantive RICO violations.

The dissent has focused on the underlying activity in this case, bribery, which is one of the alternative "racketeering activities" defined in section 1961. *See* 18 U.S.C. § 1961(1). The dissent relies on *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), and *Pandelli v. United States,* 635 F.2d 533 (6th Cir.1980), which indicate that courts must look to the specific offense at issue in a case concerning a statute with alternative elements. The dissent emphasizes the nature of a bribe as inherently including an agreement and argues that the conspiracy to fix cases, therefore, must be a lesser included offense of bribery. Focus on the nature of a bribe transaction, however, is misplaced. Section 1962(c) prohibits a *"pattern* of racketeering activity," and proof of a *pattern* of bribes was the basis of defendants' convictions. A pattern of racketeering activity, which by definition requires at least two acts, *see* 18 U.S.C. § 1961(5), is differ-

ent from an isolated bribe or "agreement" to fix a case. Relying on *Whalen* and *Pandelli* to focus on bribery, therefore, is inappropriate in this case. The conspiracy conviction in this case was based on the agreement to conduct a pattern of racketeering activity, not a mere agreement inherent in the offer and acceptance of an isolated bribe. The conspiracy conviction, therefore, required proof of an element not required to prove the substantive charge, and the two offenses are not the "same offense" under *Blockburger.*

Even if we were to focus on the bribery element, however, this court has rejected the argument that conspiracy is a lesser included offense of bribery. *See United States v. Finazzo,* 704 F.2d 300, 305 (6th Cir.), *cert. denied,* 463 U.S. 1210, 103 S.Ct. 3543, 77 L.Ed.2d 1392 (1983). The defendants in *Finazzo* argued that the very same agreement shown to prove bribery also proved conspiracy. That argument mistakenly focused on the evidence submitted at trial; the relevant inquiry examines the proof necessary to establish the statutory elements. *Id.* (citing *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975)). *See also Pryor v. Rose,* 724 F.2d 525, 529 (6th Cir.1984) (en banc). The *Finazzo* court then determined that because the bribery and conspiracy offenses each required " 'proof of a fact the other does not,' the *Blockburger* test is satisfied." 704 F.2d at 305. Even focusing on bribery, therefore, does not avoid the conclusion that the conspiracy and substantive offenses are not the same under *Blockburger.*

We disagree with the dissent's position, set out in footnote 1, that the "historical *Blockburger* analysis" has been "rejected" by the Supreme Court. In *Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983), the Chief Justice stated:

In *Whalen v. United States, supra,* we addressed the question whether cumulative punishments for the offenses of rape and of killing the same victim in the perpetration of the crime of rape was

contrary to federal statutory and constitutional law. A divided court relied on *Blockburger v. United States*, 284 U.S. 299 [52 S.Ct. 180, 76 L.Ed. 306] (1932), in holding that the two statutes in controversy proscribed the "same" offense. The opinion in *Blockburger* stated:

> "The applicable rule is that where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." *Id.*, at 304, 52 S.Ct. at 182.

> In *Whalen* we also noted that *Blockburger* established a rule of statutory construction....

*Id.* at 366, 103 S.Ct. at 678. Again, Chief Justice Burger referred to a later case which quoted from, and adhered to, the *Blockburger* rule:

> In *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981), we addressed the issue whether a defendant could be cumulatively punished in a single trial for conspiracy to import marihuana and conspiracy to distribute marihuana. There, in contrast to *Whalen*, we concluded that the two statutes did not proscribe the "same" offense in the sense that " 'each provision requires proof of a fact [that] the other does not.' " 450 U.S., at 339, 101 S.Ct. at 1142, quoting *Blockburger, supra*, at 304, 52 S.Ct. at 182.

*Missouri v. Hunter*, 459 U.S. at 367, 103 S.Ct. at 678.

Finally, the relationship of *Albernaz* and *Whalen*, 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1983), with *Blockburger* is set out:

> Our analysis and reasoning in *Whalen* and *Albernaz* lead inescapably to the conclusion that simply because two criminal statutes may be construed to proscribe the same conduct under the *Blockburger* test does not mean that the Double Jeopardy Clause precludes the imposition, in a single trial, of cumulative punishments pursuant to those statutes. The rule of statutory construction noted in *Whalen* is not a constitutional rule requiring courts to negate clearly expressed legislative intent.

*Missouri v. Hunter*, 459 U.S. at 368, 103 S.Ct. at 679.

We have noted the importance of legislative intent, as evidenced in *Iannelli, Whalen, Albernaz*, and *Hunter*, that indicates in the instant case that the two statutory proscriptions in controversy are directed to separate evils and are essentially separate offenses. This conclusion is entirely consistent with our analysis and adherence to "the test articulated by the Supreme Court in *Blockburger*," as set out in *Finazzo*, 704 F.2d at 305. In short, recent cases such as *Ball, Hunter*, and *Finazzo* clearly indicate that although *Whalen* and *Pandelli* require courts to focus on the particular offense at issue under a statute with alternative elements, the *Blockburger* test has not been rejected by the Supreme Court or this court. Because the *Whalen* and *Pandelli* approach is inapt in this case, a straightforward application of *Blockburger* is appropriate.

Both the *Blockburger* test and our independent evaluation of congressional purpose indicate that the concurrent sentences in this case are permissible. Accordingly, we AFFIRM the decision that the concurrent sentences imposed on the Callanans are valid.

MERRITT, Circuit Judge, dissenting.

The issue presented by this appeal is whether the substantive and conspiracy RICO offenses are the same, thus making separate punishments impermissible under the Double Jeopardy Clause of the United States Constitution. Unlike the majority, I find that under the facts of this case, the offenses are the same, and I therefore dissent.

The RICO enterprise charged and proved in this case is that defendant Evan Callanan, Sr.'s judicial office was conducted through a pattern of criminal activity, namely, taking bribes to fix cases. The

conspiracy charged was the agreement to take money to fix cases. This agreement was essential to the government's proof on the substantive offense. In order for the defendants charged in the RICO substantive offense to conduct the enterprise in this way they necessarily had to agree to do it. This agreement is the conspiracy offense charged and proved—nothing more, nothing less. The government's proof on the conspiracy count was an essential element, a lesser included offense, of the substantive offense.

The Double Jeopardy Clause protects against multiple punishments for the same offense. *Ohio v. Johnson*, 467 U.S. 493, 498, 104 S.Ct. 2536, 2540, 81 L.Ed.2d 425 (1984). This protection against cumulative punishments is intended to guarantee that the sentencing discretion of courts is confined to the limits established by the legislature. Thus, the question of whether punishments are multiple "is essentially one of legislative intent." *See id.* at 499, 104 S.Ct. at 2541 (citing *Missouri v. Hunter,* 459 U.S. 359, 366–68, 103 S.Ct. 673, 678–79, 74 L.Ed.2d 535 (1983)). When legislative intent is unclear, however, the question of whether multiple punishments are permissible is governed by the test established in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932), and its progeny. *See Albernaz v. United States,* 450 U.S. 333, 337, 101 S.Ct. 1137, 1141, 67 L.Ed.2d 275 (1981); *Whalen v. United States,* 445 U.S. 684, 691, 100 S.Ct. 1432, 1437, 63 L.Ed.2d 715 (1980); *Pandelli v. United States,* 635 F.2d 533 (6th Cir.1980). The assumption under the *Blockburger* test is that Congress ordinarily does not intend to punish the same behavior under separate statutes. *Ball v.*

*United States,* 470 U.S. 856, 859, 105 S.Ct. 1668, 1670, 84 L.Ed.2d 740 (1985).

There is no evidence of Congressional intent that conspiracy and the underlying substantive offense should be separately punishable in all cases. Although the reach of the RICO statute was clearly intended to be broad, nothing in the legislative history indicates that Congress intended to authorize multiple punishments for substantive and conspiracy offenses where the conspiracy charged is an essential element of the substantive offense. Where actual Congressional intent is unclear, the *Blockburger* standard is applied to determine whether multiple punishments are permissible.

The *Blockburger* test traditionally required that the reviewing court consider the two statutes in the abstract and determine whether each statute "requires proof of a fact that the other does not." Over time, the *Blockburger* test has been refined, and it is now clear that the requisite statutory elements must be examined from the vantage point of the particular case before the court. *See Whalen v. United States,* 445 U.S. at 694, 100 S.Ct. at 1439. This court has held that "[w]hat the reviewing court must now do in applying *Blockburger* is go further and look to the legal theory of the case or the elements of the specific cause of action for which the defendant was convicted without examining the facts in detail." *Pandelli v. United States,* 635 F.2d at 538. *But see United States v. Finazzo,* 704 F.2d 300 (6th Cir.1983), which fails to recognize and apply the more refined test developed in *Whalen* and *Pandelli.*[1]

---

**1.** The fundamental difference between my position and that of the majority is that the majority also relies on the historical *Blockburger* analysis rejected by the Supreme Court in *Whalen* and this court in *Pandelli.* The majority considers whether in the abstract the substantive offense and the conspiracy could require different proofs. After determining theoretically that the RICO conspiracy charge could require proof of an agreement which the RICO substantive offense may not, the majority decides that the

*Blockburger* test has been met. This reasoning is incorrect under *Whalen* and *Pandelli. Whalen* and *Pandelli* require the court to consider whether the agreement which formed the basis for the conspiracy was, in fact, the same agreement which formed the basis for the enterprise, which was the substantive offense in this case. Applying this analysis, the agreement was the same in this case and therefore multiple punishments are impermissible under the Double Jeopardy Clause.

Applying this standard to the facts of this case, it is clear that the conspiracy is a lesser included offense of the substantive charge. The nature of the offense charged in this case—exacting bribes—necessarily requires an agreement to exact those bribes. This agreement cannot then provide the basis for conviction and punishment for conspiracy, in addition to conviction and punishment for the substantive offense of taking bribes. This agreement was the government's sole proof of conspiracy in this case, and the government does not deny that the proof on the two charges was identical. *United States v. Qaoud,* 777 F.2d 1105, 1118 (6th Cir.1985). For these reasons, I would find that in the context of this case, these offenses are identical and, therefore, separate punishments are impermissible.

The correctness of this result is also suggested by *United States v. Sutton,* 642 F.2d 1001 (6th Cir.1980) (en banc). In that case, this court held that where the proof presented for a RICO substantive and conspiracy offense is identical, the conspiracy conviction merges with the substantive offense. The court therefore required concurrent sentences.

In *Ball,* the Supreme Court held that where offenses merge under the *Blockburger* standard it is not sufficient to require concurrent sentences; rather, one of the convictions must be vacated. 470 U.S. at 865, 105 S.Ct. at 1673. The Court reasoned that the separate conviction has potential adverse consequences beyond the mere sentence which are impermissible under the Double Jeopardy Clause. *Id.*

Analyzing *Sutton* and *Ball* together requires vacation of the conspiracy conviction in this case. In *Sutton,* this court held that where the government's proof is identical, a RICO conspiracy count merges with the substantive offense. In *Ball,* the Supreme Court held that merger requires the vacation of the second conviction. Therefore, the petitioner's conspiracy conviction should be vacated.

Accordingly, I dissent.

The **FIRESTONE TIRE & RUBBER COMPANY; Virgil E. Arrington,** Plaintiffs-Appellants,

v.

James A. **NEUSSER,** Defendant-Appellee.

Nos. 85–3849, 3985.

United States Court of Appeals, Sixth Circuit.

Argued Nov. 10, 1986.

Decided Feb. 2, 1987.

Patricia M. Ritzert (argued), Akron, Ohio, for defendant-appellee.

John M. Glenn (argued), Joseph C. Weinstein, Buckingham, Doolittle & Burroughs, Akron, Ohio, Steven E. Sigalow, for plaintiffs-appellants.

Before MARTIN, MILBURN and BOGGS, Circuit Judges.

MILBURN, Circuit Judge.

Plaintiffs Firestone Tire & Rubber Company ("Firestone") and Virgil E. Arrington appeal from the summary judgment granted by the district court in favor of the defendant, the tax commissioner of the city of Akron, Ohio. Both plaintiffs appeal the district court's holding that Akron Ordinance 1298–1962, which imposes a municipal income tax, is not preempted by the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001 *et seq.* In addition, plaintiff Firestone appeals from the judgment of the district court granting defendant's motion for attorney's fees. Because we conclude that the Akron ordinance is not preempted by ERISA and that the district court did abuse its discretion in awarding attorney's fees, we affirm in part and reverse in part.

## I.

Plaintiff Firestone is an employer in the city of Akron. Plaintiff Arrington is an employee at Firestone's Akron facility. Defendant, James A. Neusser, is tax commissioner of the city of Akron.

Pursuant to Ordinance No. 1298–1962, Akron imposes a two percent tax on all income earned by residents of the city, as well as income earned by non-residents for work done within the city. Firestone is required to withhold the tax from the wages and salaries of its Akron employees and to pay the taxes to the city under section 6 of the ordinance.

As part of its employee benefit plan, Firestone has implemented two programs governed by ERISA. The first, a "Tax Efficient Savings Plan," enables an employee to divert up to seventeen percent of his income for each pay period into the Tax Efficient Savings Plan Trust. The first two percent of these contributions is invested in Firestone common stock. Employees making additional contributions may direct that they be invested in any or all of three separate investment funds.

Under the Tax Efficient Savings Plan, an employee may redirect his contributions to the three funds once annually, on January 1. On January 1 and July 1 of each year, an employee may increase or decrease his total contribution to the fund. He may cease all contributions at the end of any month.

An employee may withdraw his balance in the plan only in the event of financial hardship. He may borrow up to one-half of his account balance, within certain limitations, after participating for two years. In the event that an employee leaves the company, he receives the full market value of all savings and investment earnings.

The second ERISA plan implemented by Firestone is a "Health Care Expense Account." This plan permits an employee to direct Firestone to withhold an amount ranging from four dollars ($4.00) to two hundred dollars ($200.00) per month from his gross earnings to be used to reimburse the employee for medical expenses incurred by the employee or his dependents which are not covered by insurance. These contributions are not directed into a separate fund, but are payable from the general assets of the corporation.

These benefit plans were implemented on May 1, 1984, and Firestone requested that defendant tax commissioner rule that the amounts contributed by its employees under the plans are not subject to taxation under the Akron municipal ordinance. In a letter dated April 2, 1984, the tax commissioner ruled that the contributions were subject to taxation.

Firestone appealed the ruling to the City of Akron Tax Board of Review. Plaintiff Arrington joined in the appeal following an August 17, 1984, ruling by the Tax Commissioner. In its memorandum opinion dated August 27, 1984, the Tax Board of Review affirmed the rulings of the Tax Commissioner.

On November 29, 1984, plaintiffs filed the present action seeking a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202, and injunctive relief pursuant to 29 U.S.C. § 1132(a)(3)(A). In Count I of the complaint, plaintiffs alleged that Akron Ordinance No. 1298–1962 is preempted by ERISA because it relates to an employee benefit plan. In Count II of the complaint, plaintiffs alleged that the employer contributions are not taxable income as defined by the ordinance. On April 18, 1985, the district court dismissed Count II of the

complaint. *Firestone Tire and Rubber Co. v. Bodle*, 645 F.Supp. 305 (N.D.Ohio 1985). There is no appeal from this dismissal.

The parties subsequently filed a stipulation of the facts relevant to Count I of the complaint. On August 1, 1985, the district court granted summary judgment in favor of defendant on the ground that the Akron ordinance is a general tax of neutral application which is not preempted by ERISA. On November 15, 1985, the district court granted defendant's motion for attorney's fees pursuant to 29 U.S.C. § 1132(g)(1). In this appeal, two issues are presented for our consideration:

A. whether the district court erred in concluding that Akron Ordinance No. 1298–1962 is not preempted by ERISA; and

B. whether the district court abused its discretion in awarding defendant attorney's fees.

## II.

### A.

In enacting ERISA, "Congress intended to make the regulation of pension plans solely a federal concern." *Authier v. Ginsberg*, 757 F.2d 796, 800 (6th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 208, 88 L.Ed.2d 177 (1985). Consequently, ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a). A state law relates to an employee benefit plan, and is preempted by ERISA, if it "has 'a connection with or reference to' an ERISA pension plan...." *Authier*, 757 F.2d at 800 (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983)).[1]

---

1. Defendant argues that the Akron ordinance is not preempted because it is not a state law within the meaning of 29 U.S.C. § 1144(c), which provides:

For purposes of this section:
(1) The term "State law" includes all laws, decisions, rules, regulations, or other State action having the effect of law, of any State. A law of the United States applicable only to the District of Columbia shall be treated as a

State law rather than a law of the United States.
(2) *The term "State" includes a State, any political subdivisions thereof, or any agency or instrumentality of either, which purports to regulate, directly or indirectly,* the terms and conditions of employee benefit plans covered by this subchapter.

> It is of no moment that New Jersey intrudes indirectly, through a workers' compensation law, rather than directly, through a statute called "pension regulation." ERISA makes clear that even indirect state action bearing on private pensions may encroach upon the area of exclusive federal concern.... ERISA's authors clearly meant to preclude the States from avoiding through form the substance of the pre-emption provision.

*Id.* at 525, 101 S.Ct. at 1907.

The broad interpretation of ERISA's preemption provision was reaffirmed in *Shaw*, 463 U.S. at 96–97, 103 S.Ct. at 2899–2900. The Court concluded that "Congress used the words 'relate to' in § 514(a) [29 U.S.C. § 1144(a)] in their broad sense." *Id.* at 98, 103 S.Ct. at 2900. The Court continued:

> Nor, given the legislative history, can § 514(a) be interpreted to pre-empt only state laws dealing with the subject matters covered by ERISA—reporting, disclosure, fiduciary responsibility, and the like. The bill that became ERISA originally contained a limited pre-emption clause, applicable only to state laws relating to the specific subjects covered by ERISA. The Conference Committee rejected these provisions in favor of the present language, and indicated that the section's pre-emptive scope was as broad as its language....

This court, following the mandate of *Shaw*, has construed ERISA's preemption provision in an expansive manner. For example, in *Authier*, we considered the effect of section 1144(a) upon "a state common-law cause of action for discharge in violation of public policy based on a fiduciary's alleged compliance with ERISA." 757 F.2d at 800. We concluded that, because the plaintiff's claim was based "upon his assertion that he was terminated for fulfilling his obligations under ERISA[,]" and because "ERISA created the public policy element of the common-law action[,]" the Michigan common-law cause of action, under the facts of that case, was preempted by ERISA. *Id.* We have consistently indicated our approval of a broad interpretation of ERISA's preemption provision. *See, e.g., Whitworth Bros. Storage Co. v. Central States, Southeast and Southwest Areas Pension Fund*, 794 F.2d 221, 233–36 (6th Cir.1986); *Blakeman v. Mead Containers*, 779 F.2d 1146, 1151 (6th Cir.1985) (state law contract claim for benefits from an ERISA plan preempted by section 1144); *General Motors Corp. v. Buha*, 623 F.2d 455, 459 (6th Cir.1980) (preemption provision essential to federal regulation under ERISA).

Despite the breadth of the preemption provision, the Supreme Court has indicated that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan."

(emphasis supplied). Defendant contends that a law is not state law under 29 U.S.C. § 1144(c)(2) unless it "purports to regulate" a benefit plan.

Other jurisdictions have concluded that a state law is not preempted by ERISA unless it "relates to" and "purports to regulate" a plan. *See, e.g., Martori Bros. Distributors v. James-Massengale*, 781 F.2d 1349, 1356–59 (9th Cir.1986); *Rebaldo v. Cuomo*, 749 F.2d 133, 137 (2d Cir.1984), *cert.*

*denied*, 472 U.S. 1008, 105 S.Ct. 2702, 86 L.Ed.2d 718 (1985). Our conclusion that the Akron ordinance does not "relate to" an ERISA plan makes it unnecessary to reach the "purports to regulate" issue. "As a logical matter, if a state law does not 'relate to' ERISA plans, it cannot 'purport to regulate' them, for 'relates' includes, but is much broader than, 'purports to regulate.'" *Martori Bros. Distributors*, 781 F.2d at 1359.