UNITED STATES of America, Plaintiff-Appellee,

v.

Salvatore FINAZZO and Dominic Licavoli, Defendants-Appellants.

Nos. 81–1218, 81–1219.

United States Court of Appeals, Sixth Circuit.

Argued Aug. 3, 1982.

Decided April 5, 1983.

Rehearing Denied June 15, 1983.

Certiorari Denied June 27, 1983. See 103 S.Ct. 3543.

ENGEL, Circuit Judge.

Defendants Finazzo and Licavoli appeal from a judgment entered by the United States District Court for the Eastern District of Michigan following a jury trial in which each was convicted of (1) commanding, inducing, procuring or causing the giving of an unlawful gratuity to a public official in violation of 18 U.S.C. §§ 201(f) and 2 (count I); (2) aiding and abetting a public official in asking, demanding, exacting, soliciting, seeking, accepting, receiving or agreeing to receive an unlawful gratuity, in violation of 18 U.S.C. §§ 201(g) and 2 (count II); and (3) conspiracy to violate 18 U.S.C. §§ 201(f), 201(g), 1952 and 2, all in violation of 18 U.S.C. § 371 (count V). In addition, Finazzo was convicted of count IV, which charged that he and Licavoli had aided and abetted a violation of the Travel Act contrary to 18 U.S.C. §§ 1952 and 2. Licavoli, however, was acquitted on this count.

In his direct appeal to this court, defendant Finazzo raises the following issues:

(1) That the proofs introduced at trial constituted a constructive amendment of the indictment, thereby depriving him of his Fifth Amendment right not to be prosecuted except on charges set forth in the grand jury indictment.

(2) The trial court erred ·in giving a "Pinkerton" charge[1] to the jury which permitted the defendant to be convicted of substantive crimes committed by others.

(3) His conviction on counts I, II, IV, and V amounted to double jeopardy contrary to his rights guaranteed by the Fifth Amendment.

(4) The trial court erred in denying a judgment of acquittal notwithstanding the verdict or in the alternative for a new trial because of improper argument made by the government prosecutor.

Ivan E. Barris (argued), Barris, Golob & DuMouchel, Detroit, Mich., for defendants-appellants.

Leonard R. Gilman, U.S. Atty., Detroit, Mich., John L. Newcomer, Washington, D.C., Walter Kozar (argued), Detroit, Mich., for plaintiff-appellee.

Before ENGEL and JONES, Circuit Judges, and NEESE,* Senior District Judge.                                   •

---

* Hon. C.G. Neese, Senior United States District Court Judge for the Eastern District of Tennessee, sitting by designation. Judge Neese became a Senior District Judge at midnight on August 31, 1982.

1. The "Pinkerton" charge arises from *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct.

1180, 90 L.Ed. 1489 (1946), in which the Supreme Court held that a party to a continuing conspiracy could be held responsible for substantive offenses committed by a coconspirator in furtherance of the conspiracy even though the party does not participate in the substantive offenses nor have any knowledge of them.

On his part the defendant Licavoli, while adopting the arguments of codefendant Finazzo by reference, also lists the following claims on appeal:

(1) That the court erred in denying his motion for a judgment of acquittal, there being insufficient proof that he was a member of the conspiracy charged.

(2) The trial court erred in giving a "Pinkerton" instruction which allowed the jury to convict him of substantive crimes committed before the defendant was shown to have joined the conspiracy.

(3) The prosecutor was guilty of gross misconduct in making improper rebuttal argument which impugned the credibility and reputation of appellant's attorney and in presenting his personal opinion as to the appellant's guilt. This misconduct deprived petitioner of his rights under the Due Process Clause to a fair trial.

(4) Because the language in the substantive count of the indictment indicates the same agreement described in the conspiracy count and because the proofs of each offense at trial were the same, there was a violation of Licavoli's rights under the Double Jeopardy Clause of the Fifth Amendment.

For the reasons which follow we affirm.

The convictions underlying these appeals were based upon events which commenced in the summer of 1973 when a small construction company, BIM, Inc., sought to obtain two contracts for the excavation and underground installation work at a proposed shopping center in Akron, Ohio. The two contracts were together worth approximately $3,000,000.00, and in order to bid thereon the company was required by the principal contractor to secure performance bonds for the full amount of the contract. No surety company would write performance bonds in the amount required without a guarantee from the Small Business Administration ("SBA") that, should BIM default on the contract, the SBA would in-demnify the surety company for up to 90% of the face value of the bond. The principals of BIM, John Bobal and Frank Ilacqua, contacted one Salvatore Lauricella, Chief of the Surety Bond Guarantee Program of the SBA in Washington, D.C. Bobal and Ilacqua offered and promised Lauricella $18,000.00 in return for the latter's assistance in obtaining SBA guarantees for the requisite performance bonds. With Lauricella's assistance, BIM eventually obtained the guarantees from the SBA and performance bonds from the Cincinnati Insurance Company. Thereafter, Bobal and Ilacqua refused to pay Lauricella the $18,000.00 which they had promised and instead stated that they would give him only $10,000.00 in full payment. Lauricella, obviously desiring to obtain the entire $18,000.00 promised him, approached his "buddy," defendant Dominic Licavoli, and asked for help. Licavoli in turn brought the problem to the attention of defendant Salvatore Finazzo. During a November 1, 1973 meeting between Licavoli and Finazzo—a meeting intercepted and recorded on tape by the Federal Bureau of Investigation ("FBI")—Finazzo agreed to help Lauricella recover the promised $18,000.00 from Bobal and Ilacqua.

At the November 1 meeting the two defendants drafted a letter to an individual referred to as "Skippy." This letter sought to enlist Skippy's aid in obtaining the full $18,000.00 promised to Lauricella.[2] This letter was delivered to Skippy by Finazzo's daughter who was at the time visiting her hospitalized mother in Detroit. On December 10, 1973, Finazzo received a telephone call (also intercepted and recorded on tape by the FBI) from an unidentified person, who told Finazzo that the matter Finazzo requested "Skip" to handle in Finazzo's letter to Skip would be "straightened out in full" on December 14, 1973. On or about December 14, 1973, Bobal and Ilacqua each wrote a check in the amount of $11,500.00 on their company account, which they then cashed. Lauricella flew to Detroit on the

---

**2.** Richard Crino, the Deputy Area Administrator of the Labor Management Services Administration in Cleveland, Ohio, testified that "Skippy" is the nickname for John J. Felice, Jr., who in 1973 was the treasurer of Local 293 of the Teamster's Union in Ohio, and also a trustee for Joint Council 41 of the Teamster's Union in Ohio.

same day, and the government claimed at trial that the $18,000.00 debt owed Lauricella was paid by Bobal and Ilacqua in Detroit on December 14, 1973.

### I.

Finazzo and Licavoli contend that the Double Jeopardy Clause of the Fifth Amendment prevents their cumulative punishment for the substantive bribery charges of counts I and II and for the conspiracy charges of count V. Finazzo in addition contends that the Double Jeopardy Clause prevents his cumulative punishment for the same substantive bribery counts and his conviction on the Travel Act violation (count IV).

The Double Jeopardy Clause provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S.Const.Amend. V. It was held in *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969) that the Double Jeopardy Clause provides three separate protections. It "protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. at 717, 89 S.Ct. at 2076. Defendants' claims here involve only the third protection, that against multiple punishments for the same offense.[3]

In a careful and articulate opinion, United States District Judge Horace W. Gilmore, who presided at the jury trial, rejected each of the defendants' double jeopardy claims. *United States v. Finazzo,* 520 F.Supp. 1085 (E.D.Mich.1981). Recent decisions of the United States Supreme Court and indeed of our circuit have discussed the application of the Double Jeopardy Clause and, with respect to federal criminal of-

fenses at least, have made it clear that where separate offenses have been charged and tried in the same proceeding, the question whether separate punishments may be imposed is primarily one of Congressional intent.

In *Whalen v. United States,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), the Supreme Court considered a District of Columbia court's imposition of consecutive punishment for rape and felony murder committed in the course of rape. The Court held that the rape itself was a lesser and included offense of the felony murder charge and that Congress had not authorized consecutive sentences under such circumstances. The Court observed:

The Double Jeopardy Clause at the very least precludes federal courts from imposing consecutive sentences unless authorized by Congress to do so. The Fifth Amendment guarantee against double jeopardy embodies in this respect simply one aspect of the basic principle that within our federal constitutional framework the legislative power, including the power to define criminal offenses and to prescribe the punishments to be imposed upon those found guilty of them, resides wholly within the Congress. If a federal court exceeds its own authority by imposing multiple punishments not authorized by Congress, it violates not only the specific guarantee against double jeopardy, but also the constitutional principle of separation of powers in a manner that trenches particularly harshly on individual liberty.

*Whalen,* 445 U.S. at 689, 100 S.Ct. at 1436 (citations and footnotes omitted).

Left uncertain in *Whalen* was whether the Double Jeopardy Clause would prohibit multiple punishment in a situation where Congress clearly intended for multi-

---

**3.** Defendant Finazzo was sentenced to a term of two years on count I, two years on count II, three years on count IV and three years on count V, all sentences to run concurrently. Licavoli was sentenced to two years on count I, two years on count II, and three years on count V, those sentences to run concurrently. In

addition, however, the court imposed a $10,-000.00 fine against Finazzo in connection with each count for a total of $40,000.00 and a like sum of $10,000.00 on each of the three counts which Licavoli was found guilty of, for a total of $30,000.00.

ple punishment to exist. That question was answered in *Albernaz v. United States,* 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). While admitting that the decisional law in the area was a "veritable Sargasso Sea which could not fail to challenge the most intrepid judicial navigator," Justice Rehnquist in *Albernaz v. United States,* 450 U.S. 333, 343, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981), affirmed a Fifth Circuit determination that upheld consecutive sentences on counts of conspiracy to import marijuana, 21 U.S.C. § 963, and conspiracy to distribute marijuana, 21 U.S.C. § 846.[4] The Court observed that "the question of what punishments are constitutionally permissible is not different from the question of what punishment the Legislative Branch intended to be imposed. Where Congress intended, as it did here, to impose multiple punishments, imposition of such sentences does not violate the Constitution." 450 U.S. at 344, 101 S.Ct. at 1145. We conclude that whatever tension may have existed between existing decisions in the Sixth Circuit,[5] our inquiry under *Albernaz* is to determine whether Congress intended cumulative punishment for the separate offenses charged in the indictment under scrutiny here.

■ At issue here are three separate statutes:

18 U.S.C. § 2. Principals

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 201. Bribery of public officials and witnesses

(f) Whoever, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, for or because of any official act performed or to be performed by such public official, former public official, or person selected to be a public official; or

(g) Whoever, being a public official, former public official, or person selected to be a public official, otherwise than as provided by law for the proper discharge of official duty, directly or indirectly asks, demands, exacts, solicits, seeks, accepts, receives, or agrees to receive anything of value for himself for or because of any official act performed or to be performed by him; ... shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

18 U.S.C. § 371. Conspiracy to commit offense or to defraud United States

If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons to any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

If, however, the offense, the commission of which is the object of the conspiracy, is a misdemeanor only, the punishment for such conspiracy shall not exceed the maximum punishment provided for such misdemeanor.

The language of the conspiracy statute (section 371), and that of the bribery statute (section 201), authorize punishment for each violation and do not place limitations on cumulative punishment for violation of other sections by a single transaction. Therefore, the statutes on their face suggest that Congress intended to allow the imposition of multiple punishments in the instant case. A further examination of Congressional intent supports this conclusion.

---

**4.** The Fifth Circuit decision is reported as *United States v. Rodriguez,* 612 F.2d 906 (5th Cir. 1980).

**5.** *Compare Pandelli v. United States,* 635 F.2d 533 (6th Cir.1980), *with United States v. Fife,* 573 F.2d 369 (6th Cir.1976).

As Judge Gilmore correctly observed below, one tool for determining Congressional intent in this area is the test articulated by the Supreme Court in *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Under *Blockburger,* courts are directed to determine whether each of the offenses charged requires proof of a fact which the others do not. 284 U.S. at 304, 52 S.Ct. at 182; *see also Brown v. Ohio,* 432 U.S. 161, 166, 97 S.Ct. 2221, 2225, 53 L.Ed.2d 187 (1977). Therefore, it is necessary to determine at this point the statutory elements of the offenses charged here.

For a violation of the conspiracy statute, 18 U.S.C. § 371, the government had to prove that:

(1) the defendants conspired or agreed to violate the bribery statute and that

(2) there existed an overt act in furtherance of the conspiracy.

For a violation of 18 U.S.C. §§ 201(f) and 2, the government had to prove that:

(1) Appellants aided or caused

(2) the giving, offer, or promise of something of value

(3) to a public official

(4) for or because of an official act performed by the public official.

Likewise, for a violation of 18 U.S.C. §§ 201(g) and 2, the government had to prove:

(1) Appellants aided or caused

(2) the asking, demanding, exacting, soliciting, seeking, accepting, receiving or agreeing to receive something of value

(3) by a public official

(4) for acts performed by him.

Thus examined, it is apparent that the bribery statute contains the elements of giving and receiving a bribe, while the conspiracy statute requires only an agreement and some overt act. The substantive bribery counts therefore clearly require proof of an additional element. The question then arises whether the conspiracy count requires an additional element that the bribery count does not. The government contends that the conspiracy count requires an additional element of proof of agreement while appellants contend that the government proved aiding and abetting by showing the very same agreement between appellants—*i.e.,* the agreement to put pressure on Bobal and Ilacqua to pay the SBA official a bribe as they had previously promised.

An examination of the bribery provisions reveals that proof of a conspiratorial agreement is not required for a conviction under these statutes. Defendants here mistakingly point to the evidence submitted at trial; the relevant inquiry focuses not on the evidence actually submitted, but rather examines the proof necessary to establish the statutory elements of each offense. *Iannelli v. United States,* 420 U.S. 770, 785 n. 17, 95 S.Ct. 1284, 1293 n. 17, 43 L.Ed.2d 616 (1975). Since each offense here requires "proof of a fact that the other does not," the *Blockburger* test is satisfied, and defendants' Double Jeopardy arguments must fail.

Defendants' arguments also implicate "Wharton's Rule," however, which in brief holds that a defendant cannot be punished for conspiracy and a substantive offense if the substantive offense requires the participation of two persons. *See Iannelli v. United States,* 420 U.S. 770, 773, 95 S.Ct. 1284, 1287, 43 L.Ed.2d 616 (1975). The rule traditionally was applied to offenses which by their nature required the acts of more than one person, such as adultery, incest, bigamy and duelling. *Iannelli,* 420 U.S. at 782, 95 S.Ct. at 1292. Wharton's Rule is not grounded in double jeopardy law, but rather "has current vitality only as a judicial presumption, to be applied in the absence of legislative intent to the contrary." *Id.* In any case, application of Wharton's Rule here does not support defendants' arguments on appeal.

In *Iannelli v. United States,* 420 U.S. 770, 95 S.Ct. 1284, 43 L.Ed.2d 616 (1975), defendants were charged with conspiracy and a substantive gambling offense. The Court rejected the defendants' argument that Wharton's Rule barred prosecution and

punishment for both offenses focusing on three factors: (1) Are the parties to the agreement the only persons who participate in the substantive offense? (2) Does the crime have consequences only on those parties or also on society at large? (3) Does the agreement connected with the substantive offense pose the same threat to society "that the law of conspiracy seeks to avert?" 420 U.S. at 782–83, 95 S.Ct. at 1292. In addition the Court made it clear that Wharton's Rule "is essentially an aid to the determination of legislative intent" and as such would in any event give way to a "discernible legislative judgment." *Id.* at 786, 95 S.Ct. at 1294.

Application of the factors listed in *Iannelli* indicates that double punishment was intended to be allowed in the present case. First, not only did there exist an unlawful conspiracy to bribe Lauricella, the SBA official, in violation of 18 U.S.C. § 371, but Bobal and Ilacqua were also guilty of aiding and causing the receipt of the bribe when they delivered the money to Lauricella. Therefore, it is clear in this case that "the parties prosecuted for the conspiracy need not be the same persons who are prosecuted for commission of the substantive offense." *Id.* at 784, 95 S.Ct. at 1293. The government was free to prosecute defendants for either the conspiracy or the substantive offense, or to prosecute the defendants for both offenses. Since the pool of persons who could have participated in the commission of the substantive offense here was not limited to only those persons who were parties to the original agreement, the first test of *Iannelli* is satisfied. Likewise, the second *Iannelli* test is met because the consequences of bribery not only affect the parties to the crime but also have a negative effect on society at large. Thus, bribery is distinguishable from the classic Wharton Rule offenses cited in *Iannelli.* Third, the agreement connected with the substantive offense of bribery here poses "the distinct kinds of threats to society that the law of conspiracy seeks to avert." *Iannelli,* 420 U.S. at 783, 95 S.Ct. at 1292. As in *Iannelli,* the agreement connected with the substantive offense is "likely to gener-

ate additional agreements to engage in other criminal endeavors." *Id.* at 784, 95 S.Ct. at 1293. Finally, Wharton's Rule applies where not only the conspiracy but also the substantive offense requires "concerted criminal activity, a plurality of criminal agents." *Id.* at 785, 95 S.Ct. at 1293. Under the bribery statutes here, concerted activity is not required to convict; a donor may be convicted of a bribe even though the donee is not. *United States v. Evans,* 572 F.2d 455, 480 (5th Cir.), *cert. denied,* 439 U.S. 870, 99 S.Ct. 200, 58 L.Ed.2d 182 (1978).

■ The traditional rule of law is that conspiracy and a completed substantive offense are separate crimes. *Iannelli,* 420 U.S. at 777, 95 S.Ct. at 1289. It has not been shown to us that there exists any legislative intent on the part of Congress to prevent the government from seeking the imposition of separate sentences for the conspiracy and bribery offenses involved here. Therefore, defendants' arguments on this point are rejected. Finazzo contends, however, that his cumulative punishment for bribery and for count IV, the Travel Act offense, also violates the Double Jeopardy Clause.

The Travel Act, 18 U.S.C. § 1952, provides:

§ 1952. Interstate and foreign travel or transportation in aid of racketeering enterprises

(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

(1) distribute the proceeds of any unlawful activity; or

(2) commit any crime of violence to further any unlawful activity; or

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2) and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States, or (2) extortion, bribery, or arson in violation of the laws of the State in which committed or of the United States.

(c) Investigations of violations under this section involving liquor or narcotics shall be conducted under the supervision of the Secretary of the Treasury.

Again we note that nothing on the face of the statute indicates an intention in Congress to prohibit cumulative punishment for the two offenses.

As we noted earlier, to prove the bribery counts the government had to show that:

(1) Finazzo aided or caused

(2) the giving (for § 201(f) or receiving (for § 201(g)) of something of value

(3) to or by a public official

(4) for acts performed by the official.

In contrast, under the Travel Act the government was required to show that:

(1) Finazzo caused someone to travel in interstate commerce (here, his daughter);

(2) the person had intent to commit unlawful activities while so traveling; and

(3) that the person did commit the unlawful activity.

Clearly the Travel Act requires proof of interstate travel while the bribery statute does not. Finazzo claims, however, that there is no additional element for the bribery counts because the Travel Act requires interstate travel plus bribery. Thus he argues that in this instance bribery is a lesser included offense. The government's response is that the bribery counts require proof that someone actually committed the crimes defined in 18 U.S.C. §§ 201(f), 201(g) (that is, that someone actually gave, offered or promised a bribe to Lauricella under count I, and that Lauricella asked for, demanded, exacted, solicited, sought,

accepted, received, or agreed to receive a bribe under count II), while the Travel Act does not require a completed offense. Therefore, actual commission of the bribery offenses here provide the additional element which satisfies *Blockburger.* The government urges that the Travel Act does not require that the intended criminal offense actually be completed, but only that unlawful activity leading towards the completion of the offense has taken place.

In *United States v. Goldfarb,* 643 F.2d 422 (6th Cir.), *cert. denied,* 454 U.S. 827, 102 S.Ct. 118, 70 L.Ed.2d 101 (1981), Goldfarb was convicted both of substantive offenses proscribed by the Travel Act, 18 U.S.C. § 1952, and of a conspiracy to violate the Travel Act, 18 U.S.C. § 371. It was the government's theory, supported by evidence, that Goldfarb a Birmingham, Michigan bondsman, had traveled to Las Vegas for the purpose of engaging in a scheme whereby he would participate in the clandestine ownership of a Nevada hotel's gaming operations in violation of a Nevada statute. In his defense, Goldfarb asserted that he was merely a valued customer of the casino, a former investor, and possibly a future stockholder and officer of the corporation whose efforts to acquire ownership in the casino had not as yet been acted upon by Nevada. Holding that the evidence presented a disputed question of fact for the jury, our court observed that while proof of the commission or an attempted commission of a Federal or state defined criminal offense is an essential element of a Travel Act conviction, "it is certainly true that the ... crime need not be actually accomplished." 643 F.2d at 426. *See also United States v. Pomponio,* 511 F.2d 953, 957 (4th Cir.), *cert. denied,* 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975). Applying those principles to this case, we observe that the ultimate consummation of the conspiratorial scheme was not required for a Travel Act conviction here. Since each bribery offense required that the offense be accomplished, while the Travel Act requires only unlawful activity in furtherance of the underlying offense, the cumulative punish-

ment imposed on Finazzo does not violate the Double Jeopardy Clause.

## II.

■ Defendants further claim that the government's presentation of proofs amounted to an unlawful constructive amendment of the indictment. Count V of the indictment charged a conspiracy between Finazzo, Licavoli, Lauricella, Bobal and Ilacqua from on or about May 1, 1973 and continuously thereafter until January 1, 1974. Finazzo and Licavoli claim their convictions on count V of the indictment (*i.e.,* of conspiracy to violate 18 U.S.C. § 201(f)) cannot stand because the conspiracy to bribe was complete upon the making of the offer and the promise of benefit in exchange for official action. *United States v. Shulman,* 624 F.2d 384, 387 (2d Cir.1980). Thus it is claimed that the completed offer and promise were made before the two defendants here were brought in to provide the necessary muscle to make the final collection. Therefore, defendants conclude, the government proved two separate conspiracies although it had alleged only one conspiracy in the indictment.

Emphasizing the fact that 18 U.S.C. § 201(f) contains the word "give" as well as "offer" and "promise," the government asserts that under section 201 the giving of the bribe was also a violation of the statute. *United States v. Michaelson,* 165 F.2d 732 (2d Cir.), *aff'd,* 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948); *United States v. Barnes,* 431 F.2d 878 (9th Cir.1970), *cert. denied,* 400 U.S. 1024, 91 S.Ct. 582, 27 L.Ed.2d 637 (1971). Since the conduct is described in the disjunctive, a violation of any element is sufficient to complete the crime. Therefore, argues the government, since the bribe was not actually given to Lauricella before Licavoli's entrance into the conspiracy, it is evident that the conspiracy had not terminated since its ultimate object, the actual payment of the bribe to Lauricella, had not

yet been accomplished. Because Licavoli (and Finazzo) joined the conspiracy before it ended, he is liable for any "acts and agreements which took place before he had joined." *United States v. Peraino,* 645 F.2d 548, 551 (6th Cir.), *cert. denied,* 454 U.S. 1046, 102 S.Ct. 586, 70 L.Ed.2d 488 (1981); *United States v. Cimini,* 427 F.2d 129, 130 (6th Cir.), *cert. denied,* 400 U.S. 911, 91 S.Ct. 137, 27 L.Ed.2d 151 (1970).

We believe the foregoing review of the evidence belies the assertion that there was any constructive amendment of the indictment. While defendants would have us construe the circumstances as proving a wholly separate and distinct conspiracy on the part of Finazzo and Licavoli to extort the money which was already owed by Bobal and Ilacqua to Lauricella under their illegal agreement, there can be little doubt that the defendants played a vital and effective role in carrying out and assisting the original offenses set forth in counts I and II. A review of the proofs fully satisfies us that there is no substantial likelihood that defendants were convicted of an offense other than that charged by the grand jury. *United States v. Beeler,* 587 F.2d 340, 342 (6th Cir.1978), *cert. denied,* 454 U.S. 860, 102 S.Ct. 315, 70 L.Ed.2d 158 (1981).[6] The proof submitted at trial of a single conspiracy also justifies the trial judge's *Pinkerton* instruction with reference to the substantive offenses in counts I and II. *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946); *see* note 1, *supra.*

■ Finally, it is claimed that the prosecutor was guilty of improper argument in making derogatory comments about defense counsel and in expressing his opinion of the guilt of the defendants. The language employed, though perhaps ambiguous, was not construed by the trial judge as actually conveying the prosecutor's personal opinion of guilt. Since the trial judge was present and heard the language in the con-

---

**6.** Similarly, it is unnecessary to consider Licavoli's argument that a defendant can not be convicted of aiding and abetting a completed crime. The crime at issue here was not complete at the time Licavoli entered the conspir-

acy. The payment of the bribe to Lauricella took place after Licavoli joined the conspiracy, and under 18 U.S.C. § 201(f) the conspiracy to "give" Lauricella a bribe did not terminate until the bribe was actually paid to Lauricella.

text and atmosphere in which it was given, we are not disposed to disturb that finding. We agree with the defendant that the remarks objected to were unseemly. These remarks, however, were provoked by arguments made by the attorneys for Finazzo and Licavoli, remarks which in our view were equally inappropriate. This fact does not of course excuse attorneys representing the United States from compliance with the higher duty cast upon them. *See Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935). The prosecutor here committed similar misconduct in *United States v. Smith*, 500 F.2d 293 (6th Cir.1974). This fact alone suggests that further sanctions might have been appropriate. At the same time any possible taint from the unseemly comment was in our judgment removed by the curative and sensible instructions given by the able trial judge.

Affirmed.