48 F.3d 1220
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Thomas SMOKOFF, Jr., Defendant-Appellant.
 No. 93-2363.
 United States Court of Appeals, Sixth Circuit.
 Feb. 28, 1995.
 
 Before: KEITH, JONES, and MILBURN, Circuit Judges.
 MILBURN, Circuit Judge.
 
 
 1
 Defendant Thomas Smokoff, Jr. appeals his convictions for conspiracy to violate the Travel Act in violation of 18 U.S.C. Sec. 371 and interstate travel in aid of racketeering enterprises in violation of the Travel Act, 18 U.S.C. Sec. 1952. On appeal, the issues are (1) whether the evidence was sufficient to support defendant's convictions on both the conspiracy and Travel Act violations; and (2) whether the district court improperly instructed the jury by failing to instruct on the elements of arson, the state offense underlying both the conspiracy and Travel Act counts. For the reasons that follow, we affirm in part and reverse in part.
 
 I.
 A.
 
 2
 This case arises out of a Federal Bureau of Investigation ("F.B.I.") undercover project called "Steal Band." The project was developed to target persons who were transporting stolen vehicles across state lines. In furtherance of the project, the F.B.I. set up an alleged international automobile export business called Longview Enterprises ("Longview") in Taylor, Michigan. Longview was equipped with audio and video equipment to record the undercover activities. During the investigation, Special Agent Thomas Martin assumed the role of J.T. Maddock and Special Agent Thomas Engram assumed the role of Walter Thomas.
 
 
 3
 An F.B.I. informant introduced Special Agent Martin to Thomas C. Hafer through telephone contact. In his assumed role, Special Agent Martin began business dealings with Hafer wherein Hafer would bring stolen vehicles from Utah to Michigan and sell them to J.T. Maddock at Longview. Defendant Smokoff was not involved in this part of the investigation.
 
 
 4
 Initially, Hafer and Special Agent Martin conducted their business dealings by telephone. However, on August 21, 1991, Special Agent Martin travelled to Salt Lake City, Utah, to meet Hafer. It was at this meeting that Hafer brought up the idea of arson. Hafer told Special Agent Martin that he had a friend who was an expert in demolition, and Special Agent Martin told Hafer that he thought he knew someone in Michigan who needed a building burned.
 
 
 5
 On September 20, 1991, Hafer travelled from Utah to Michigan to meet with Special Agent Martin and inspect the building that was supposed to be burned. A video recording of the initial meeting at Longview between Hafer and Special Agent Martin, a cassette recording of the inspection of the building, and surveillance photographs taken during the inspection were admitted into evidence at defendant's trial. Special Agent Engram posed as the owner of the building, and he told Hafer that he wanted the building burned so he could open a nightclub.
 
 
 6
 Hafer testified that at the time he mentioned the arson to Special Agent Martin he did not know who was going to help him complete the arson.[1] Hafer asked two other people to be the "mouthpiece" in the negotiations with Special Agent Martin before he contacted defendant for assistance. Defendant agreed to assist Hafer by playing the role of an arsonist. On October 13, 1991, Hafer, defendant, and Special Agent Martin met in Salt Lake City, Utah, to discuss the plans for the fire. At the meeting, defendant told Special Agent Martin that the job would cost $20,000 and that he wanted $5,000 at that time and $15,000 when the job was complete. Both Special Agent Martin and Hafer testified that defendant gave the instructions at the meeting and stated that all he would need is a key to get the job done.
 
 
 7
 Between October 13, 1991, and November 14, 1991, Hafer and Special Agent Martin spoke on the telephone almost daily in order to finalize the plans to burn the building. Special Agent Martin sent the $5,000 down payment to Hafer. Hafer paid defendant between $300 and $500, and continued to discuss the plans to burn the building with defendant. Hafer later testified at the trial that in mid-October 1991, defendant's role in the arson expanded from that of being a "mouthpiece" to defendant's intending to commit the arson. Hafer also testified that prior to their arrival in Michigan, he and defendant agreed to burn the building. At his trial, defendant admitted that he knew Hafer had received the money but denied receiving any part of it.
 
 
 8
 On November 14, 1991, Hafer and defendant flew to Detroit, Michigan, and Special Agent Martin picked them up at the airport. On the way to their hotel, Special Agent Martin drove them past the building to be burned but did not stop. While in the car, Special Agent Martin showed defendant and Hafer the $15,000 balance due for the arson and gave defendant a set of keys to the building. Defendant later testified at his trial that he saw a set of keys but did not receive them. The conversation in the car was tape-recorded and played for the jury. At the hotel, Special Agent Martin began drawing a map to the building. Defendant, Hafer, and Special Agent Martin were then arrested by the F.B.I., questioned at the Federal Building, and released. The arson was cancelled and defendant and Hafer returned to Salt Lake City, Utah, the next morning.
 
 B.
 
 9
 On July 10, 1992, a grand jury returned an eleven count indictment against defendants Thomas C. Hafer, John Stallman, and Thomas Smokoff, Jr. Defendant Smokoff was charged in only two counts of the indictment. Count ten [count one of the redacted indictment] charged conspiracy to violate the Travel Act in violation of 18 U.S.C. Sec. 371 and count eleven [count two of the redacted indictment] charged interstate travel in aid of racketeering enterprises in violation of the Travel Act, 18 U.S.C. Sec. 1952.
 
 
 10
 Defendant Smokoff's jury trial began on June 15, 1993. At the close of the government's case, defendant moved for acquittal pursuant to Federal Rule of Criminal Procedure ("Fed.R.Crim.P.") 29 on count eleven, which charged a Travel Act violation. In defendant's motion, he argued that an actual attempt to commit the underlying state offense of arson was a necessary element of the Travel Act and that the government conceded that defendant made no such attempt. The district court reserved ruling on the motion until defendant had presented his case. The district court denied defendant's motion finding that an attempt to commit the underlying state offense of arson was not an element of the Travel Act. The jury found defendant guilty on both counts of the indictment on June 18, 1993. On September 21, 1993, the district court sentenced defendant to 37 months imprisonment on each count, with the sentences to be served concurrently. This timely appeal followed.
 
 II.
 A.
 
 11
 (1)
 
 
 12
 Defendant Smokoff argues that the evidence was insufficient to support the jury verdicts finding him guilty of violating the Travel Act. As earlier stated, defendant made a Fed.R.Crim.P. 29 motion for acquittal of the Travel Act count, and the district court denied defendant's motion. Defendant asserts that the Travel Act is a specific intent crime and that the government failed to present evidence that defendant intended to travel in interstate commerce to commit an arson in Michigan. In addition, defendant asserts that the Travel Act requires the commission or attempted commission of the underlying state crime of arson and that in this case, the government admitted there was no attempted arson.
 
 
 13
 "In determining the sufficiency of the evidence to support a guilty verdict, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Pearce, 912 F.2d 159, 161 (6th Cir.1990) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)), cert. denied sub nom. Thorpe v. United States, 498 U.S. 1093 (1991).
 
 
 14
 This court has held that to " 'successfully prosecute one under [the Travel Act], the United States must prove the following elements: (1) that the accused voluntarily traveled in interstate commerce or used the facilities of interstate commerce; (2) that he attempted to or did in fact promote, manage, establish, carry on or facilitate the promotion, management, establishment or carrying on of any one of certain statutorily defined activities; and (3) that the accused formed a specific intent to promote, manage, establish, carry on or facilitate one of the prohibited activities.' "[2] United States v. Stagman, 446 F.2d 489, 491 (6th Cir.1971) (quoting United States v. Gebhart, 441 F.2d 1261, 1263 (6th Cir.), cert. denied, 404 U.S. 855 (1971)). Moreover, this court has held that the specific intent to violate the underlying state law is an element of the Travel Act. Stagman, 446 F.2d at 491.
 
 
 15
 In this case, the record shows that both defendant and his co-defendant Hafer testified that defendant agreed to represent to Special Agent Martin that defendant was an arsonist and to be the "mouthpiece" for the negotiations with Special Agent Martin. Hafer also testified that he gave defendant $300 to $500 of the $5,000 down payment that Special Agent Martin had given Hafer for the arson. After making his own travel arrangements with his travel agency, defendant travelled to Michigan with Hafer. As earlier stated, Hafer testified that defendant's role in the arson expanded in mid-October 1991, from that of being a "mouthpiece" to defendant's intending to commit the arson. In this connection, Hafer testified that prior to their arrival in Michigan, he and defendant agreed to burn the building and that there was no other reason why he and defendant travelled to Michigan. Further, Special Agent Martin testified that he drove defendant and Hafer past the building that was to be burned and gave defendant a set of keys to the building.
 
 
 16
 Defendant argues that this evidence is insufficient because Special Agent Martin could not know whether defendant had the specific intent to commit an arson, or whether he was merely playing a role. Therefore, defendant argues that the only evidence of defendant's intent was the testimony of Hafer. Defendant argues this testimony should be discredited because Hafer lied to Special Agent Martin on several occasions. However, when reviewing a criminal case for sufficiency of the evidence, we will not weigh the evidence, consider the credibility of the witnesses, or substitute our judgment for that of the jury. United States v. Evans, 883 F.2d 496, 501 (6th Cir.1989). Therefore, we conclude that the evidence was sufficient for a rational trier of fact to find that defendant had the requisite specific intent to commit an arson in Michigan.
 
 
 17
 (2)
 
 
 18
 Defendant also argues that a Travel Act conviction requires proof that defendant either completed or attempted the underlying state offense. Since the government did not show that defendant made any attempt to commit arson, defendant argues that the government failed to present evidence on an essential element of the Travel Act charge. Defendant made this argument before the district court in support of his Fed.R.Crim.P. 29 motion for acquittal. In denying defendant's motion, the district court relied on cases from the Second and Eleventh Circuits for the proposition that an attempt, as that term is defined by the law, is not an element of a Travel Act offense. See United States v. Jenkins, 943 F.2d 167, 173 (2d Cir.), cert. denied, 112 S.Ct. 659 (1991); United States v. Griffin, 699 F.2d 1102, 1106 (11th Cir.1983).
 
 
 19
 Defendant argues that the district court erred in relying on Jenkins and Griffin because in United States v. Goldfarb, 643 F.2d 422 (6th Cir.), cert. denied, 454 U.S. 827 (1981), this court determined that proof of the commission or attempted commission of a state defined criminal offense is an essential element of a Travel Act charge. In Goldfarb, we stated:
 
 
 20
 There is some dispute as to the nature and essentiality of the underlying state law violation, although most decisions agree that it is the violation of federal law which is the gravamen of a Travel Act offense. Some courts hold that proof of the commission or attempted commission of a state defined criminal offense is an essential element of a Travel Act conviction, while others hold that it is not. It is certainly true that the state crime need not be actually accomplished.
 
 
 21
 It is abundantly clear that as a predicate to a Travel Act conviction, absent a distinct violation of a law of the United States, the defendants must have engaged in some form of unlawful activity prohibited by [state law]. This contention is beyond dispute and amply supported by the language of the Act and by the case law.
 
 
 22
 Goldfarb, 643 F.2d at 426 (citations omitted). A subsequent panel of this court in rendering its decision that the attempted commission of an underlying state offense is an element of a Travel Act offense, interpreted Goldfarb as follows:
 
 
 23
 [In Goldfarb ], our court observed that while proof of the commission or an attempted commission of a Federal or state defined criminal offense is an essential element of a Travel Act conviction, 'it is certainly true that the ... crime need not be actually accomplished.'
 
 
 24
 United States v. Finazzo, 704 F.2d 300, 307 (6th Cir.) (emphasis added) (quoting Goldfarb, 643 F.2d at 426), cert. denied, 463 U.S. 1210 (1983). Regardless of whether or not the quote above from Goldfarb is dicta, the quote from Finazzo is central to the court's holding, and we are bound to follow Finazzo.[3]
 
 
 25
 Thus, the commission or attempted commission of the underlying state offense, i.e., arson, is an essential element for a Travel Act violation, and the district court erred in relying on case law to the contrary from other circuits. We are bound by the prior decisions of this court. See Salmi v. Secretary of Health & Human Servs., 774 F.2d 685, 689 (6th Cir.1985) ("[A] prior decision [of another panel of this court] remains controlling authority unless an inconsistent decision of the United States Supreme Court requires modification of the decision or this Court sitting en banc overrules the prior decision."). In this case, the government only submitted evidence that defendant saw the building to be burned, received a set of keys to the building, and went to his hotel before being arrested by the F.B.I.. Therefore, we find that the evidence is insufficient to support defendant's Travel Act conviction because the government failed to present evidence that defendant attempted to commit arson in Michigan. Accordingly, we shall reverse defendant's conviction of interstate travel in aid of racketeering enterprises in violation of the Travel Act, 18 U.S.C. Sec. 1952.
 
 
 26
 (3)
 
 
 27
 Defendant also argues that the evidence was insufficient to support his conviction for conspiracy to violate the Travel Act. Specifically, defendant asserts that the government failed to prove that defendant knowingly and voluntarily joined a conspiracy to travel across state lines to commit an arson.
 
 
 28
 Because defendant failed to make a Fed.R.Crim.P. 29 motion for acquital of the conspiracy count, we review only for plain error. U.S. v. Morrow, 977 F.2d 222, 230 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 2969 (1993). Federal Rule of Criminal Procedure 52(b) is the applicable rule governing our review for plain error. Following United States v. Olano, 113 S.Ct. 1770 (1993), this court has determined that a Rule 52(b) inquiry is made up of four distinct analyses. United States v. Thomas, 11 F.3d 620, 630 (6th Cir.1993), cert. denied, 114 S.Ct. 1570 (1994). In Thomas, we stated:
 
 
 29
 First, we are to consider whether an error occurred in the district court. Absent any error, our inquiry is at an end. However, if an error occurred, we then consider if the error was plain. If it is, then we proceed to inquire whether the plain error affects substantial rights. Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.
 
 
 30
 Id.
 
 
 31
 In this case, the government presented evidence that defendant did intend to commit an arson in Michigan as discussed above. Therefore, the evidence was sufficient to support defendant's conviction of conspiracy to violate the Travel Act.
 
 B.
 
 32
 Defendant also argues that the jury instructions were inadequate because the district court failed to instruct the jury on all of the elements of arson under Michigan law. Because we reverse defendant's Travel Act conviction, we only review the adequacy of the jury instructions for conspiracy. Defendant did not object to the jury instructions at the trial. Therefore, we review only for plain error. See United States v. Morrow, 977 F.2d 222, 226 (6th Cir.1992) (en banc), cert. denied, 113 S.Ct. 2969 (1993). As stated above, in a Fed.R.Crim.P. 52(b) inquiry, we must first determine if an error occurred in the district court. United States v. Olano, 113 S.Ct. 1770 (1993); United States v. Thomas, 11 F.3d 620, 630 (6th Cir.1993), cert. denied, 114 S.Ct. 1570 (1994).
 
 
 33
 In this case, no error occurred in the district court. At trial, the district court instructed the jury that in order to find defendant guilty of conspiracy to violate the Travel Act, it must find that "two or more persons conspired or agreed to commit the crime of traveling in interstate commerce with the intent to promote, manage, carry on, and facilitate the arson of a building." J.A. 45. The district court did not define arson in its instructions regarding the conspiracy count. However, in the jury instructions for the Travel Act charge, the district court instructed the jury that:
 
 
 34
 Michigan law provides that: "Any person who willfully or maliciously burns any building or other real property of the contents thereof shall be guilty of an offense against the state of Michigan."
 
 
 35
 ............................................................
 
 
 36
 ....................
 
 
 37
 * * *
 
 
 38
 The term "knowingly" as used in these instructions to describe the alleged state of mind of the defendant means that he was conscious and aware of his actions, realized what he was doing or what was happening around him, and did not fail to act because of ignorance, mistake, or accident.
 
 
 39
 The term "willfully" as used in these instructions to describe the alleged state of mind of the defendant means that he knowingly performed an act deliberately and intentionally, as contrasted with accidently, carelessly, or unintentionally.
 
 
 40
 J.A. 50-51.
 
 
 41
 Thus, the jury was adequately instructed on the law of arson in Michigan so that it could determine whether defendant conspired or agreed to commit the crime of traveling in interstate commerce with the intent to facilitate the arson of a building. See United States v. English, 925 F.2d 154, 158 (6th Cir.) (stating that district court will not be reversed for an error in jury instructions unless they failed to accurately reflect the law), cert. denied, 501 U.S. 1210 (1991). In this case, the jury instructions adequately defined the offense underlying the conspiracy charge; namely, the offense of arson under Michigan law. Therefore, the district court's instructions were not in plain error.
 
 III.
 
 42
 For the reasons stated, we REVERSE defendant's conviction for violating the Travel Act, but we AFFIRM defendant's conviction of conspiracy to violate the Travel Act.
 
 
 43
 NATHANIEL R. JONES, Circuit Judge, concurring in part and dissenting in part.
 
 
 44
 I concur in the majority's decision to affirm the conviction of Smokoff for conspiracy to violate the Travel Act, but I dissent from the majority's decision to reverse Smokoff's conviction for violating the Travel Act.
 
 
 45
 Satisfied that it is bound by two prior Sixth Circuit decisions, United States v. Goldfarb, 643 F.2d 422 (6th Cir.), cert. denied, 454 U.S. 827 (1981); and United States v. Finazzo, 704 F.2d 300 (6th Cir.), cert. denied, 463 U.S. 1210 (1983), the majority concludes that "the commission or attempted commission of the underlying state offense, i.e., arson, is an essential element for a Travel Act violation, and the district court erred in relying on case law to the contrary from other circuits." Majority Op. at 10. Because the government did not present evidence that Smokoff attempted to commit arson in Michigan, the majority finds the evidence insufficient to support Smokoff's Travel Act conviction.
 
 
 46
 I respectfully disagree with my distinguished colleagues' conclusion for two reasons. First, neither Goldfarb nor Finazzo binds this court to conclude that the commission or attempted commission of the underlying state offense, arson, is an element of a Travel Act violation. Second, the statutory language, itself, and persuasive authorities from other circuits that have specifically addressed this issue indicate that the commission or attempted commission of the underlying state offense is not an element of a Travel Act violation.
 
 I.
 
 47
 I am led to my view that this court is not bound by the Goldfarb and Finazzo decisions because the statements in those decisions that are relevant to this issue are only dicta and were not integral to the holdings in those decisions. It is a given that a decision of one panel of this court binds all other panels. Nevertheless, it is equally clear that this rule does not extend to dicta. United States v. Jenkins, 4 F.3d 1338, 1345 n. 8 (6th Cir.1993) (citing Stockler v. Garratt, 893 F.2d 856, 859 n. 2 (6th Cir.1990)), cert. denied, 114 S.Ct. 1547 (1994).
 
 
 48
 In Goldfarb, this court faced the issue whether violation of the Nevada Gaming Commission Regulations was a violation of Nevada law and thereby an unlawful activity as defined in the Travel Act, 18 U.S.C. Sec. 1952. 643 F.2d at 425. The court ultimately held that "the violation of the Nevada statutes and implementing regulations would constitute unlawful activity under the Travel Act." Id. at 430.
 
 
 49
 The issue in Goldfarb, however, is not disputed in this case. The parties agree that the burning of a building is a violation of the laws of Michigan and thereby an "unlawful activity" under the Travel Act. The issue in Smokoff is whether the government must prove as an element of the Travel Act that Smokoff committed or attempted to commit arson or whether the government must only prove that Smokoff knowingly performed or attempted to perform an act that "otherwise promote[d], manage[d], establish[ed], carr[ied] on, or facilitate[d] the promotion, management, establishment, or carrying on, of [the arson]." See 18 U.S.C. Sec. 1952 (1988 & Supp. V 1993)[1] I am convinced that the plain language of section 1952, says the latter and not the former. Thus, the Goldfarb court was not addressing the issue we face in this case.
 
 
 50
 Nevertheless, the Goldfarb court offered one statement that relates to the issue before us:
 
 
 51
 Some courts hold that proof of the commission or attempted commission of a state defined criminal offense is an essential element of a Travel Act conviction, while others hold that it is not. It is certainly true that the state crime need not be actually accomplished.
 
 
 52
 643 F.2d at 426 (citations omitted). Recognizing the narrow scope of the issue before it, namely whether violation of the Nevada Gaming Commission Regulations was a violation of Nevada law and thereby an unlawful activity as defined in the Travel Act, the Goldfarb court did not engage in the above stated debate but only proceeded to hold the following:
 
 
 53
 It is abundantly clear that as a predicate to a Travel Act conviction, absent a distinct violation of a law of the United States, the defendants must have engaged in some form of unlawful activity prohibited by [state law]. This contention is beyond dispute and amply supported by the language of the Act and by case law.
 
 
 54
 Id.
 
 
 55
 Taken together, these statements clearly do not present a binding precedent that to sustain a Travel Act conviction, the government must prove that a defendant committed or attempted to commit the underlying state offense. Instead, the first statement represents a passing reference to a legal debate that the Goldfarb court chose to avoid in the second statement, since the debate was not central to the question before it. As such, the passing reference was nothing more than dictum in the Goldfarb decision. The majority appears to concede this possibility. See Majority Op. at 10.
 
 
 56
 The Finazzo court, however, clouded the precedential question through its less-than-careful interpretation of the holding in Goldfarb. The issue in Finazzo was whether Finazzo's cumulative punishments for bribery and a Travel Act offense violated the Double Jeopardy Clause. 704 F.2d at 306. With this in mind, the Finazzo court looked to the Goldfarb opinion and stated the following:
 
 
 57
 Holding that the evidence presented a disputed question of fact for the jury, [in Goldfarb ] our court observed that while proof of the commission or an attempted commission of a federal or state defined criminal offense is an essential element of a Travel Act conviction, "it is certainly true that the ... crime need not be actually accomplished."
 
 
 58
 Id. at 307 (emphasis added). What is immediately apparent to the reader, based on the previous discussion, is that the Finazzo court misinterpreted Goldfarb because Goldfarb did not say that proof of the commission or an attempted commission of a federal or state defined criminal offense was an essential element of a Travel Act conviction. Rather, Goldfarb only alluded to the fact that case law revealed a legal debate over this issue.
 
 
 59
 My difficulty with the majority opinion is that it treats the italicized portion of the above-quoted statement from Finazzo, as binding precedent on this court. Regardless of the Finazzo court's erroneous interpretation of Goldfarb, the majority would be correct if the italicized statement was central to the Finazzo court's holding, but it is not.
 
 
 60
 Careful examination of the Finazzo decision reveals that the statement from Goldfarb that was central to the Finazzo court's holding was in fact the quoted portion that is underlined above: "it is certainly true that the ... crime need not be actually accomplished." The Finazzo court was attempting to distinguish the offense of bribery, which does require that the offense be accomplished, from a Travel Act violation, which does not require that the underlying state offense be accomplished. This distinction would allow the court to uphold both convictions in the face of the Double Jeopardy Clause. After the above quoted sentence, the court proceeded to say the following:
 
 
 61
 Applying those principles to this case, we observe that the ultimate consummation of the conspiratorial scheme was not required for a Travel Act conviction here. Since each bribery offense required that the offense be accomplished, while the Travel Act requires only unlawful activity in furtherance of the underlying offense, the cumulative punishment imposed on Finazzo does not violate the Double Jeopardy Clause.
 
 
 62
 Finazzo, 704 F.2d at 307-08 (emphasis added). Notice that the underlined portion in the second passage corresponds directly to the underlined quote in the first passage.
 
 
 63
 The Finazzo court, unlike the situation in this case, was concerned only with the issue of whether a Travel Act violation requires completion of the underlying state offense. Clearly it did not. Goldfarb said this, and Finazzo quoted that portion of Goldfarb to support its holding. In the process of reaching the quoted statement of Goldfarb, the Finazzo court made a careless transitional statement, which was not central to its holding, regarding whether proof of the commission or attempted commission of the underlying state offense was an essential element of a Travel Act conviction, and it wrongly attributed the statement to the Goldfarb court. Based on the foregoing analysis, the latter statement is nothing more than dictum in Finazzo, and as such, it, too, is not binding on this court.
 
 II.
 
 64
 Beyond the realization that this court is not bound by precedent regarding the issue in this case, I am convinced that the commission or attempted commission of the underlying state offense, arson, is not an element of a Travel Act violation. Rather, as the statute provides, the government must prove that Smokoff knowingly performed or attempted to perform an act that "otherwise promote[d], manage[d], establish[ed], carr[ied] on, or facilitate[d] the promotion, management, establishment, or carrying on, of [the arson]." See 18 U.S.C. Sec. 1952. The latter element of proof is not synonymous with the inchoate offense of attempt.
 
 
 65
 Apparently recognizing, the lack of binding precedent on this question in the Sixth Circuit, the district court looked to the persuasive authority of other circuits that had specifically addressed the issue. In holding that the completed crime of arson or attempted arson was not an element of the Travel Act, the district court relied on two cases, United States v. Griffin, 699 F.2d 1102 (11th Cir.1983), and United States v. Jenkins, 943 F.2d 167 (2d Cir.), cert. denied, 502 U.S. 1014 (1991).
 
 
 66
 In Griffin, the defendant argued that because he did not attempt to commit any unlawful activity once in Pennsylvania, his conduct was not in violation of the Travel Act. Chief Judge Markey, writing for the Eleventh Circuit, stated the following:
 
 
 67
 The government was not required to prove that either an actual or attempted drugging actually occurred. As the court stated in United States v. Jones, 642 F.2d 909, at [sic] 913 (5th Cir.1981): [T]he facilitating act in the other state need not be unlawful itself. As long as the interstate travel ... and the subsequent facilitating act make the unlawful activity easier, the jurisdictional requisites under Sec. 1952 are complete.
 
 
 68
 Griffin, 699 F.2d at 1106.
 
 
 69
 More recently in Jenkins, the Second Circuit addressed the same issue. Jenkins challenged the sufficiency of the indictment claiming that because the Travel Act requires acts constituting an attempted state law offense, the language of the indictment did not allege a violation of the Travel Act. Judge Altimari, writing for the panel, proceeded to discuss the elements of the Travel Act and held the following:
 
 
 70
 The nature and elements of the Travel Act are plainly distinct from the crime of attempt. The Travel Act is a substantive offense that in-an-of-itself punishes individuals for using facilities of interstate or foreign commerce to further certain unlawful activities.... In contrast, the crime of attempt is an inchoate offense that provides a means of punishing individuals who have sufficiently manifested their intent to commit a particular substantive offense yet have failed to consummate the crime.... Unlike the crime of attempt, the Travel Act does not require that the government establish that the accused took a substantial step in furtherance of the intended unlawful activity. Rather, as discussed above, to establish a Travel Act violation the government must prove that the defendant used a facility of interstate or foreign commerce to "make easier or facilitate" the intended unlawful activity, and thereafter did one additional act in furtherance of the unlawful activity.
 
 
 71
 Jenkins, 943 F.2d at 172-73.
 
 
 72
 Like the district court, I find the language of the statute coupled with the reasoning of the Eleventh and Second Circuits to be quite persuasive. In this case, the government did not charge Smokoff with arson or attempted arson. Thus, contrary to the conclusion of the majority, it is not required to prove the commission or attempted commission of an arson to sustain a violation of the Travel Act.
 
 
 73
 With this distinction in mind, a reasonable juror could have concluded beyond a reasonable doubt that Smokoff knowingly travelled from Utah to Michigan, that he engaged in this travel with the intent to promote, manage, establish, carry on, or facilitate the activity of arson, which is unlawful in Michigan, and that he knowingly and deliberately performed an act or attempted to perform an act in order to promote, manage, establish, carry on, or facilitate the unlawful activity of arson.
 
 
 74
 The facts revealed that Smokoff voluntarily traveled from Utah to Michigan; he made his own travel arrangements with the travel agency. By October-November 1991, Hafer testified that Smokoff's role had expanded beyond the mere playing of a role and that Smokoff intended to burn the building. Hafer also testified that prior to their arrival in Michigan, Smokoff and he had agreed to burn the building. Hafer stated that there was no other reason why he and Smokoff came to Michigan: "I came here with Tom Smokoff to burn down that building on Telegraph Road." J.A. at 116. The tape recording of the car ride from the airport to the hotel, which was played for the jury, was further evidence of Smokoff's intent to promote and facilitate the arson.
 
 
 75
 Once in Michigan, Smokoff performed some acts in furtherance of the unlawful activity. After arriving in Detroit, Smokoff was shown the location of the building, and he accepted the keys to the building. When he was arrested, he was examining a map of the building that Special Agent Martin was drawing. These facts constituted, as Judge Altimari wrote in Jenkins, "one additional act in furtherance of the unlawful activity," and they are sufficient for a reasonable juror to find Smokoff guilty of a Travel Act violation.
 
 
 76
 Therefore, based on the foregoing legal analysis as applied to the facts of this case, I would uphold Smokoff's Travel Act conviction.
 
 
 77
 * * *
 
 
 
 [1]
 Hafer was charged with one count of stolen vehicle and property conspiracy, eight counts of interstate transportation of stolen vehicles and property, one count of conspiracy to violate the Travel Act and one count of violation of the Travel Act. Hafer pleaded guilty to conspiracy regarding the interstate transportation of stolen vehicles and property and violation of the Travel Act, pursuant to a Rule 11 Plea Agreement which included his cooperation
 
 
 [2]
 The Travel Act provides in relevant part:
 (a) Whoever travels in interstate or foreign commerce or uses the mail or any facility in interstate or foreign commerce, with intent to
 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 and imprisoned for not more than five years, or both.
 18 U.S.C. Sec. 1952.
 
 
 [3]
 In Finazzo, we addressed the issue of whether the defendant's cummulative punishment for bribery and a Travel Act offense violated the Double Jeopardy Clause. In concluding that it did not, we applied the test articulated by the Supreme Court in Blockburger v. United States, 284 U.S. 299 (1932), under which "courts are directed to determine whether each of the offenses charged requires proof of a fact which the others do not." Finazzo, 704 F.2d at 305. Thus, we found it "necessary to determine ... the statutory elements of the offenses charged here." Id. Accordingly, our finding in Finazzo, that the commssion or attempted commission of a state crime is an essential element of a Travel Act offense, is central to the court's holding. The dissent maintains that this language in Finazzo is dicta because, it argues, Finazzo relied only on its conclusion that a Travel Act offense does not require that the underlying state offense be completed while the offense of bribery does require that the offense be accomplished. However, we believe that our finding in Finazzo, that the commission or attempted commission of a state crime is an essential element of a Travel Act offense, was necessary to perform the Blockburger analysis and, as such, was not dicta
 
 
 [1]
 In pertinent part, the Travel Act reads as follows:
 (a) Whoever travels in interstate ... commerce ... with intent to--....
 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3) shall be fined not more than $10,000 or imprisoned for not more than five years, or both.
 (b) As used in this section "unlawful activity" means ... (2) ... arson in violation of the laws of the State in which committed or of the United States....
 18 U.S.C. Sec. 1952 (1988 & Supp. V 1993).